CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

FEB - 1 2022

JULIA C. DUDLEY, CLERK
BY: /s/ [Deputy signature]
DEPUTY CLERK

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information associated with the Facebook, Inc. account user ID "100070156665993" that is stored at premises controlled by Facebook, Inc.

Case No. 1:22mj14

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 USC 846 | Conspiracy to Distribute a Controlled Substance |
| 21 USC 843(b) | Use of Any Communication Facility in Committing Drug Offenses |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ [signature]
Applicant's signature

Zachary A.W. King, TFO, FBI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone (specify reliable electronic means).

Date: 2/1/22

/s/ Pamela Meade Sargent
Judge's signature

City and state: Abingdon, Virginia

Pamela M. Sargent, United States Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID '1000701566665993' THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Case No. _____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Zachary A. W. King being duly sworn, hereby depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID 1000701566665993.

1. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been since July 2021. I am currently assigned to the Richmond Division, Bristol Resident Agency of the FBI, and am responsible for investigating controlled substance violations involving the trafficking and subsequent distribution of those substances. I am also a Narcotics Investigator for the Smyth County Sheriff's Office, and I have received specialized training in investigations involving the trafficking of controlled substances and the proceeds from the sale

of controlled substances. I have also received training on the identification and interdiction of controlled substances. I have been with the Smyth County Sheriff's Office since August of 2016, and I have been an Investigator for approximately the last two years. Before I started working in civilian law enforcement, I worked for six years as a military police officer in the United States Air Force. I was honorably discharged from the Air Force in December 2013.

2. Based on my training and experience, my own investigation of this matter, and the facts as set forth in this affidavit, I submit that there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), have been committed by Brian Cory Hoover (HOOVER) who utilizes the Facebook User ID 100070156665993. There is also probable cause to search the information described in Attachment A for evidence of and instrumentalities of these crimes, further described in Attachment B.

3. As this Affidavit is being submitted for a limited purpose, I have not included all facts known by law enforcement. I only set forth facts necessary to support the issuance of the requested search warrant.

4. These conclusions and opinions set forth are based on my experience and training, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation.

## APPLICABLE LAW

5. Pursuant to 21 U.S.C. § 843(b), it is "unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the

2

commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II."

6. Distribution of controlled substances, in violation of 21 U.S.C. § 841(a) constitutes "a felony under any provision of this subchapter," as cited above.

7. A "communication facility" is defined as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication." 21 U.S.C. § 843(b).

8. Section 846 of Title 21 provides: "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## PROBABLE CAUSE

9. On or about August 20, 2021, this Affiant engaged the Drug Enforcement Administration (DEA) and the FBI for support in connection with an ongoing investigation involving the trafficking and subsequent distribution of methamphetamine in Smyth County. The methamphetamine was suspected to originate from a source of supply in Atlanta, Georgia. Law enforcement identified multiple people who appeared to be engaged in the trafficking and subsequent distribution of methamphetamine.

10. As part of that investigation, on or about September 28, 2021, investigating law enforcement discovered that HOOVER was encountered by law enforcement officers of the Bristol Tennessee Police Department (BTPD) on August 28, 2021. The encounter resulted in the arrest and subsequent search of HOOVER. The search led to the discovery of approximately one ounce of methamphetamine, $1,750.00 in U.S. currency, and an iPhone cellular telephone. BTPD

initiated an investigation and conducted a forensic analysis of the iPhone cellular telephone discovered during the encounter.

11. On October 01, 2021, investigating law enforcement reached out to the BTPD and obtained a copy of the forensic extraction report on HOOVER's iPhone cellular telephone. An analysis of the report revealed multiple text-message chains between HOOVER and other co-conspirators that are indicative of the trafficking and subsequent distribution of methamphetamine. Some of these conversations were communicated through the Facebook Messenger digital application utilizing the Facebook User ID "1000070156665993" and the associated profile name "Cory Hoover." Several of the text-based conversations involving narcotics distribution include co-conspirators delivering cash proceeds of drug sales to HOOVER's mother's residence, known by law enforcement to be located at 301 Greenway Avenue, Marion, Virginia, which is in the Western District of Virginia. In particular, on August 13, 2021, an individual using the Facebook User ID "100017890863623" sent a text-message to HOOVER requesting to purchase "r 30s." Based on my training and experience, the term "R30" (and variations on that term) is a common euphemism used by drug traffickers to refer to counterfeit oxycodone-hydrochloride pills that often contain fentanyl. Furthermore, on August 16, 2021, a self-admitted methamphetamine trafficker, who is well-known to law enforcement, used Facebook User ID "100058303465302," to send a text-message to HOOVER on the Facebook Messenger application indicating he had delivered $14,000 to the 301 Greenway Avenue residence.

12. On October 13, 2021, law enforcement officers of the Washington County Sheriff's Office (WCSO) and the Holston River Regional Narcotics Drug Force (HRDTF), conducted a traffic stop on a white in color Chrysler 300 sedan for a traffic violation. WCSO identified the driver and sole occupant to be HOOVER. Over the course of the traffic stop, probable cause was

4

developed to search the vehicle and HOOVER's person. As a result of the search, law enforcement discovered suspected cocaine and methamphetamine on HOOVER's person, in addition to a Samsung cellular telephone. HOOVER was arrested and transported to the WCSO in Abingdon, Virginia where investigators from the HRDTF, Smyth County Sheriff's Office, and FBI conducted an interview. The interview was audio and video recorded.

13. HOOVER was advised of his *Miranda* rights, and agreed to speak with investigating law enforcement without an attorney present. Over the course of the interview, HOOVER disclosed that he was actively involved in the trafficking and subsequent distribution of methamphetamine in Southwest Virginia. According to HOOVER, since July 2021, he routinely transported six to ten pounds of methamphetamine twice a month from a source of supply in Atlanta, Georgia to Southwest Virginia. HOOVER further indicated, that on occasion he would make the trip more frequently, if able to gather the necessary cash to do so. HOOVER stated that he paid $2,500 per pound of methamphetamine, and generally met with his Georgia-based source of supply with $25,000. Furthermore, HOOVER explained that he last trafficked methamphetamine from Georgia into Southwest Virginia in early October 2021. Lastly, HOOVER disclosed his residence to be located at 301 Greenway Avenue, in Marion, Virginia 24354, but was actively distributing the methamphetamine throughout Southwest Virginia.

14. This Court has issued a warrant for HOOVER's arrest, and he is currently a fugitive.

## FACEBOOK-SPECIFIC FACTS

15. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news,

photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos associated with a user's account will include all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

21. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant

messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

22. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

27. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

28. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

29. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

30. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and

tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

32. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

33. Based on the foregoing information, I request that the Court issue the proposed search warrant.

34. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

35. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

36. The government will execute this warrant by serving the warrant on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

11

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Zachary A. W. King
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to telephonically this ___1st___ day of February, 2022.

Pamela Meade Sargent
UNITED STATES MAGISTRATE JUDGE

Reviewed by: Whitney D. Pierce, AUSA

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the Facebook user ID "100070156665993" and any associated information stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

I. **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

        gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(g)    All "check ins" and other location information;

(h)    All IP logs, including all records of the IP addresses that logged into the account;

(i)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)    All information about the Facebook pages that the account is or was a "fan" of;

(k)    All past and present lists of friends created by the account;

(l)    All records of Facebook searches performed by the account;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)    The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (Possession of a Controlled Substance with Intent to Distribute); 21 U.S.C. § 843(b) (Use of Any Communication Facility in Committing Drug Offenses); and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances) involving HOOVER since March 01, 2021, for the Facebook User ID "1000070156665993" identified on Attachment A, information pertaining to the following matters:

(a) Records relating to the sale of illegal drugs, and preparatory steps taken in furtherance of narcotics trafficking;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Records relating to who created, used, or communicated with the user ID "1000070156665993," including records about their identities and whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence,

3

fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.